FAANAU of Faganeanea and TAUAIGA of Faganeanea, Plaintiffs

v.

FAUMUI of Faganeanea, Defendant

No. 15-1947

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Faletoa" in Faganeanea]

March 6, 1947

———————

A. A. MORROW, *Chief Justice;* PULETU and MULI, *District Judges.*

Heard at Fagatogo on Tuesday, February 25, 1947 at 0900. Leasiolagi for Faumui; Lutu for Faanau; Epenesa for Tauaiga.

MORROW, *Chief Justice.*

Faumui applied to the Registrar of Titles to have the land Faletoa in the village of Faganeanea registered as his property. A survey was filed with the application. Faanau, Tauaiga and Taito, all of Faganeanea, each filed a separate objection to the registration of the land as Faumui property. Later Taito withdrew his objection in favor of Tauaiga.

At the hearing of the case it appeared that Faumui claimed that Faletoa was communal land of the Faumui family; Faanau claimed it as the communal land of the Faanau family; Taito, having withdrawn his objection, did not appear in the case; Tauaiga apparently claimed part of the land as his own individual property, and disclaimed ownership of the remainder.

The judges listened to the testimony with care. It has been transcribed and carefully studied.

228

To establish his claim Faumui testified that he was the senior matai of the family and that Faanau was his talking chief. He also testified that Tauaiga was a member of his family. In addition he stated that Faumui Tainuu was buried on the land. However, he did not claim this as of his own knowledge but stated that it was so told by his grandmother to his father and by his father to him. He claimed other Faumui people were buried on the land. He admitted that Tauaiga and his parents before him had occupied the part claimed by Tauaiga for about 40 years; that Tauaiga had lived on the land ever since he was born. He admitted also that Faanau's children, viz. Nora, Pene and Fesoatai were occupying and using the land Faletoa at the present time. Faanu, a witness for Faumui, corroborated the testimony of Faumui in a number of respects. An examination of the record of matai titles shows the present Faumui is the first Faumui to register his name as a Faganeanea title. Said registration was only made June 30, 1936.

Faanau, who testified that he was 60 years old, denied that he was a member of Faumui's family and claimed that there is no such title as Faumui in the village of Faganeanea; that the Faumui title belongs to Nuuuli. He denied that there were any Faumui people buried on the land in dispute. He also gave testimony showing that the land Faletoa has been occupied and used by the Faanau family since before the government was established in American Samoa in 1900. He denied that he had ever seen any Faumui people living on the land. He testified that the Faanau family had claimed Faletoa as their own communal family land ever since the government was established.

Faanau did not claim all of the land included in the survey. He testified that the survey included part of the land Moemalie which he said had been given by a former Faanau to a former Taito. The evidence was to the effect that a green house of the Marines given to Faumui is on the

land Moemalie. While there was some conflict in the evidence as to when Moemalie was given to Taito, the court is of the opinion that the weight of the testimony favors the view that the gift was made prior to the establishment of the government. Maluia, 65 years old, testified that the gift occurred prior to the establishment of the government.

It should be stated that Faanau could not point out on the survey what part of the surveyed land was given to Taito.

Tauaiga is a young man. He claimed part of the surveyed land as his own individual property, but could not point out on the survey just what part he claimed. Taito is his matai. He claimed the land through the right of his mother. In response to the question "Where did her authority come from?" Tauaiga replied "Nobody just my mother." Thereupon he was asked: "She just assumed the authority?" to which he replied "Yes." He said he got this information from his parents. And again he was asked: "Do you know where your mother's authority came from?" to which the witness replied "From her own knowledge."

The court is of the opinion, in view of the evidence, that the land offered for registration by Faumui is not Faumui property. It is true that a green house, described as the Marines' house in the evidence, stands on the land and is occupied by Faumui people. This occupation of the house has necessarily been since the Marines, here during the war, had no further use for it. It seems that some commission (just what commission is not clear) representing the United States transferred the house to Faumui. But whatever commission or body it was, it obviously had no authority over the land on which the house was built, although it may have had authority with respect to the house itself. There was no evidence whatsoever that title to the land where the house is had ever passed to the United

States, so it is obvious that no act of a commission, if there was such, representing the United States could deprive the owner of such land and pass title to it to Faumui. Nor was there any evidence that the commission, if such there was, ever attempted to pass title to the land to Faumui. The evidence related to transfer of the house only.

In view of all the evidence the Court is convinced that the land Faletoa and part of the land Moemalie are included in the survey. It is also convinced from the evidence that the Faanau family have been in possession of the land Faletoa since before the government was established in 1900; that during that period the Faanau family has used continuously Faletoa under a claim of ownership.

The extension of the jurisdiction of the United States to the Samoan Islands in 1900 did not affect private land titles. I Hyde, International Law, P. 235; *United States v. Percheman*, 7 Peters 51, 86–87; *Talo v. Poi*, No. 16-1937; *Ilaoa v. Toilolo*, No. 5-1937.

In *Talo v. Tavai*, No. 14-1938 at P. 2 this court said:

"This Court has decided that the Statute of 21 James I, C. 16, passed by the English Parliament in 1623 limiting actions for the recovery of real property, subject to certain exceptions not here applicable, to twenty years is a part of the law of American Samoa. *Talo v. Poi*, No. 16-1937; *Leapaga v. Taumua L.*, No. 8-1938. The result of adverse possession for twenty years is to divest the true owner of his title and to vest it in the adverse possessor. *Maxwell Land Grant Co. v. Dawson*, 151 U.S. 586, 14 S.Ct. 458, 38 L.Ed. 279. '... in the United States and Canada the doctrine is almost universal that possession for the statutory period not only bars the remedy of the holder of the paper title but also extinguishes his title and vests title in fee in the adverse occupant.' 2 Corpus Juris 251 citing in support thereof a multitude of cases from numerous federal and state courts. Referring to the interpretation of similar statutes in the various states limiting actions for the recovery of real property, Tiffany in his work on Real Property at pp. 997–8 says: 'They have, however, with but few, if any, exceptions, been construed as operating to transfer the title to the wrongful possessor, enabling him to assert his ownership in an action of ejectment, or otherwise against

231

the whole world, including the original owner, and as rendering necessary a legal conveyance in order to revest ownership in the latter, after the lapse of the statutory period.' This interpretation of the effect of the operation of the Statute of 21 James I, C. 16 has heretofore been approved by this Court, *Talo v. Poi,* No. 16-1937."

It is clear to the court from the evidence that the possession of Faletoa by the Faanau family has been adverse to all others, at least since the establishment of the government; we find that such is still the property of Taito. Without doubt, prior to 1900 Samoan custom permitted one matai to give land to another matai. Any such gift would be governed by Samoan custom in force at the time and not by a law enacted after the establishment of the government.

We do not believe from the evidence that Tauaiga, a young man, has established his claim to the part of Moemalie included in the survey. He claims through his mother but the evidence does not show how she acquired title, if she did.

Nor do we think that Taito by withdrawing his objection in favor of Tauaiga could transfer any title which Taito, as a matai, might have in this part of Moemalie to Tauaiga, a young man. By Sec. 1216 of the Code "It is prohibited for any matai of a Samoan family who is, as such, in control of communal family lands or any part thereof, to alienate such family lands or any part thereof without written approval of the Governor of American Samoa." There was no claim that the Governor ever gave his written approval to any alienation by Taito to Tauaiga.

No doubt Taito when he withdrew his objection in favor of Tauaiga did so under the mistaken notion that he could transfer the part of Moemalie included in the survey to Tauaiga. In view of this we think the withdrawal of Taito's objection was ineffective.

While the court decides that no part of the land included in the survey is Faumui property, nevertheless it cannot

direct that the part of the surveyed land called Faletoa be registered as the communal land of the Faanau, nor the remainder as the communal land of the Taito, since no witness, who was questioned about the matter, could point out on the survey just what part was the land Faletoa and what part was the part of the land Moemalie included in the survey.

The Registrar of Titles will be advised not to register any of the property included in the survey as the property of the Faumui.

Court costs in the sum of $25.00 are hereby assessed against Faumui, the sum to be paid within 30 days.